NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1641
_____

CHRIST THE KING MANOR, INC., BALDOCK ASSOCIATES, d/b/a Baldock Health Center;
BONHAM NURSING CENTER; BRIARLEAF NURSING AND CONVALESCENT
CENTER, INC.; BROOKMONT HEALTH CARE CENTER, LLC; CATHEDRAL VILLAGE;
CPSR ASSOCIATES, LLC, d/b/a Mon Valley Care Center; ELLEN MEMORIAL HEALTH
CARE CENTER-HONESDALE, INC.; GREENLEAF NURSING AND CONVALESCENT
CENTER, INC.; HUMBERT LANE ASSOCIATES, d/b/a Humbert Lane Nursing and
Rehabilitation Center; KINKORA PYTHIAN HOME CORPORATION; KUTZTOWN
MANOR, INC.; PICKERING MANOR HOME; RHEEMS NURSING AND
REHABILITATION, LLC; SIEMON NURSING HOME, INC., d/b/a/Siemon's Lakeview
Manor Estate; CARBON-SCHUYKILL COMMUNITY HOSPITAL, INC. d/b/a St. Luke's
Miners Memorial Geriatric Center; SOUTHWESTERN GROUP, LTD, d/b/a Southwestern
Nursing Center; SUSQUEHANNA VALLEY NURSING AND REHABILITATION CENTER,
LLC; WINDSOR, INC., d/b/a Snyder Memorial Health Care Center; 890 WEATHERWOOD
LANE OPERATING COMPANY, LLC, d/b/a The Rehabilitation and Nursing Center at Greater
Pittsburgh; 4114 SCHAPER AVENUE OPERATING COMPANY, LLC, d/b/a Presque Isle
Rehabilitation & Nursing Center

v.

SECRETARY UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
ADMINISTRATOR OF THE CENTERS FOR MEDICARE & MEDICAID SERVICES;
FRANCIS MCCULLOUGH, in his official capacity as Associate Regional Administrator-
Region II Division of Medicaid and Children's Health Operations of the Centers for Medicare
and Medicaid Services (CMS)


Christ the King Manor, Inc.,
Baldock Associates, d/b/a Baldock Health Health Care Center,
Briarleaf Nursing and Convalescent Center, Inc.,
CPSR Associates, LLC, d/b/a Mon Valley Care Center;
Ellen Memorial Health Care Center-Honesdale, Inc.,
Greenleaf Nursing and Convalescent Center, Inc.,
Humbert Lane Associates, d/b/a Humbert Lane
Nursing and Rehabilitation Center,
Kinkora Pythian Home Corporation, Kutztown Manor, Inc.,
Pickering Manor Home, Rheems Nursing and Rehabilitation, LLC,

Siemon Nursing Home, Inc., d/b/a Siemon's Lakeview Manor,
Carbon-Schuylkill Community Hospital, Inc., d/b/a St. Luke's
Miners's Memorial Geriatric Center, Susquehanna Valley
Nursing and Rehabilitation Center, LLC, 890 Weatherwood
Lane Operating Company, LLC, d/b/a Rehabilitation
and Nursing Center in Greater Pittsburgh, 4114 Schaper
Avenue Operating Company, LLC, d/b/a Presque Isle Rehabilitation
& Nursing Center,
                    Appellants
                    _____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-14-cv-01809)
District Judge: Honorable John E. Jones, III
_____

Argued November 2, 2016

Before: HARDIMAN and SCIRICA, *Circuit Judges*,
and ROSENTHAL,[*] *District Judge*.

(Filed: December 12, 2016)

Daniel K. Natirboff [Argued]
Glenn A. Parno
Capozzi Adler
1200 Camp Hill Bypass
Suite 205
Camp Hill, PA 17011
          *Counsel for Plaintiffs-Appellants*

Alisa B. Klein
Jeffrey E. Sandberg [Argued]
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
          *Counsel for Defendants-Appellees*

---

[*] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

_____

OPINION[**]

_____

ROSENTHAL, *District Judge*.

In 2008, the Department of Health and Human Services approved an amendment to Pennsylvania's Medicaid plan for reimbursing private nursing homes for patient care provided in 2008 and 2009. The amendment reduced the payments from what they otherwise would have been. The nursing homes sued, challenging the amendment's approval and seeking an order requiring adherence to the prior year's plan-reimbursement formula. The District Court affirmed the Secretary's approval of the 2008 plan amendment. This is the second of two appeals resulting from that plan amendment.

The first appeal required the panel to decide a substantive challenge to the amendment. The panel found that the agency's approval was arbitrary and capricious because the Secretary had failed to explain it adequately. The plan had been in effect for a year when the panel reversed and remanded to the District Court. After the panel remand, the agency reopened proceedings, reconsidered its determination, and in 2014 again approved the 2008 plan amendment. The nursing homes went back to the District Court, which approved the agency's redetermination. This second appeal followed, raising two issues, one procedural and one substantive.

The procedural issue requires us to decide the effect of the order from our Court reversing the District Court's judgment approving the agency's 2008 action and

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

remanding to the District Court with instructions to enter "a declaratory judgment for Plaintiffs, all in accordance with the opinion of this Court." The nursing homes contend that this Order and the District Court final judgment that followed precluded any further agency action. The substantive issue requires us to decide whether, if the agency could reconsider its earlier determination, that reconsideration had to be limited to the predictive data relied on in the initial approval, or whether the agency could also consider the data collected from actual experience with the amended plan from 2008 to 2009, the year it had been in effect.

We find the agency's reopening and reconsideration consistent with the first panel's mandate reversing and remanding to the District Court with instructions to issue a judgment "in accordance with" the panel's opinion. We find the agency's reliance on the actual-experience data accumulated after the original determination consistent with the case law and with common sense. Finding no error, we will affirm the judgment of the District Court.

## I.

Medicaid and Medicare are "cooperative federal-state program[s] under which the federal government furnishes funding to states for the purpose of providing medical assistance to eligible low-income persons." *Pennsylvania Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 533 (3d Cir. 2002) (en banc). To qualify for federal funding, a participating state must submit a plan for medical assistance and any proposed plan amendment to the Secretary of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"). 42 U.S.C. § 1396a(a); 42 C.F.R. § 430.10.

That plan must detail the state's program and show its compliance with the Medicaid Act. 42 U.S.C. § 1396a(a); 42 C.F.R. § 430.10; *see Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.* ("*Christ the King I*"), 730 F.3d 291, 297 (3d. Cir. 2013).

The Medicaid Act sets out procedures and criteria for rates to pay participating providers. 42 U.S.C. § 1396a(a)(30)(A). Section 30(A) requires a state to "assure that payments to providers produce four outcomes: (1) 'efficiency,' (2) 'economy,' (3) 'quality of care,' and (4) adequate access to providers by Medicaid beneficiaries." *Pennsylvania Pharmacists Ass'n*, 283 F.3d at 537 (quoting 42 U.S.C. § 1396a(a)(30)(A)). CMS is required to review state plans and proposed plan amendments to ensure compliance with § 30(A). *Christ the King I*, 730 F.3d at 297.

Pennsylvania uses a "case-mix rate" to determine how much Medicaid will reimburse private nursing homes for the covered care they provide. *Id.* at 298. The case-mix rate uses a formula to generate per-diem reimbursements for each nursing home. *Id.* In June 2005, Pennsylvania's Department of Public Welfare determined that reimbursement rates had increased too much and too fast, and that absent corrective action, there would not be enough money to reimburse nursing homes for the costs they incurred. *Id.* To slow the rate increases, the Department proposed an annually determined "budget adjustment factor," abbreviated as BAF. *Id.* The BAF is a fraction by which the case-mix rate is multiplied to determine the net-reimbursement rate. *Id.* Although the Department portrayed the BAF as an interim measure to be applied in the 2005 to 2006 fiscal year, the BAF became a fixture in Pennsylvania's reimbursement

formula. *Id.* The BAF was recalculated each year based on the Pennsylvania legislature's budget-allocation decisions.[1] *Id.* at 298–99.

In 2008, Pennsylvania submitted the proposed plan amendment designated as SPA 08-007 to CMS for approval. That amendment would adjust the BAF for fiscal year 2008 to 2009 to make the case-mix payment rate 9.109% lower than it would have been using the existing plan. *Id.* at 301. CMS approved the proposed amendment in December 2008. The new rates were retroactively applied to July 2008, the beginning of the 2008 to 2009 fiscal year. *Id.* at 302. Fifty-three private nursing homes sued, alleging that CMS had approved the amendment without considering its effect on the quality of care, as § 30(A) required. *Id.* The nursing homes asked the District Court to order Pennsylvania to reimburse them using the case-mix rate without the BAF decrease. *Id.*

The District Court entered summary judgment for the government defendants, finding that CMS had reasonably determined that the plan amendment complied with § 30(A). *Id.* at 303. The nursing homes appealed. In *Christ the King I*, the panel reversed because the Secretary had failed to "articulate a satisfactory explanation" for her determination that the revised payment method would not adversely impact the quality of care. *Id.* at 314. The panel remanded to the District Court "with instructions to enter a declaratory judgment in favor of Plaintiffs on their claim that HHS's approval of [the amendment] was arbitrary and capricious under the APA." *Id.* at 321. The panel's

---

[1] The case-mix rate was reduced by the percentage defined in that year's BAF; the 2005 to 2006 rates were reduced by 4.878%, the 2006 to 2007 rates by 6.245%, and the 2007 to 2008 rates by 6.806%. *Christ the King I*, 730 F.3d at 299.

mandate added that the District Court was to enter "a declaratory judgment for Plaintiffs, all in accordance with the opinion of this Court."

The panel noted that it did not "imply that the payments Pennsylvania made to providers during the 2008–09 fiscal year were in fact inconsistent with any of Section 30(A)'s requirements." *Id.* at 314. The panel also noted that it did "not mean that Plaintiffs will necessarily be entitled to a rate recalculation" or that "they should have been paid in accordance with the previously approved state plan," which had not used the budget-adjustment factor. *Id.* at 314 n.25. The panel made clear that "[w]hen, as here, 'the record before the agency does not support the agency action,' the agency may be afforded an opportunity 'for additional investigation or explanation,' upon which the agency could lawfully base its action." *Id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Back at the District Court, the parties disagreed about how the Court should word its judgment. The nursing homes proposed language expressly barring CMS from any further review of the disapproved amendment. The government proposed language expressly remanding the case to CMS for further consideration. The District Court rejected both proposals. In December 2013, the District Court entered a judgment that quoted the mandate from *Christ the King I*. The judgment read as follows:

> Pursuant to the mandate of the United States Court of Appeals for the Third Circuit issued on September 19, 2013, it is hereby ordered that:
>
> > Judgment is entered in favor of Plaintiffs on their claim that the Department of Health and Human Service's approval of SPA 08-007 was arbitrary and capricious.

7

In May 2014, CMS informed Pennsylvania that the agency would reopen the record and reconsider whether the amended repayment rates that had been in effect from July 2008 through June 2009 were consistent with the Medicaid Act. CMS invited Pennsylvania to submit evidence on the impact the rates had on the quality of care. In August 2014, Pennsylvania submitted a letter explaining why the amended rates were consistent with "efficiency, economy, quality of care and access to care." The letter included supporting data that showed the actual experience under the revised rates during the year they were in effect before the panel decision issued. That data obviously did not exist when CMS initially approved the plan amendment in December 2008. In December 2014, the Secretary, through CMS, issued a revised determination with a detailed explanation concluding that the amendment's payment method was consistent with the quality-of-care requirement.

While CMS was reconsidering the amended rates, 21 of the original 53 nursing homes went back to the District Court to ask for an injunction preventing CMS from reconsidering the plan amendment. When the Secretary issued the revised determination approving the amendment, the 21 nursing homes moved to set it aside as contrary to *Christ the King I*. The nursing homes did not reprise their earlier substantive challenge to the merits of the approval. Instead, they argued that *Christ the King I* precluded CMS from reconsidering the plan amendment at all.

The District Court rejected the nursing homes' arguments. It concluded that *Christ the King I* had "explicitly license[d]" a "remand for further agency proceedings" and that its own prior judgment was "best understood" as implicitly remanding to CMS

for further proceedings.  *Christ the King Manor, Inc. v. Burwell*, 163 F. Supp. 3d. 123, 131–32 (M.D. Pa. 2016).

The nursing homes raised another argument before the District Court.  They contended that the agency's redetermination was inconsistent with § 30(A) because it relied on the data measuring the actual impact of the revised rates on the quality of care in nursing homes during 2008 and 2009, instead of limiting what it considered to the predictive data available in 2008, when the agency first reviewed the proposed plan amendment.  The nursing homes argued that to the extent the record allowed remand and reconsideration, CMS was limited to using the predictive data available when it first approved the revised reimbursement rates.  The District Court rejected this argument and found that the statute allowed using the later quality-of-care data from the year of actual experience under the reduced payment rates.  *Id.* at 133–35.

## II.

This Court "appl[ies] *de novo* review to a district court's grant of summary judgment in a case brought under the APA, and in turn appl[ies] the applicable standard of review to the underlying agency decision." *Pennsylvania Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 146 (3d Cir. 2012) (internal quotation marks omitted). "The underlying agency decision is reviewed under the APA, which requires courts to set aside an agency decision that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or that was conducted 'without observance of procedure required by law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A) & (D)).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its

judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This Court exercises plenary review over the District Court's interpretation of the prior panel mandate. *Kilbarr Corp. v. Business Sys. Inc.*, 990 F.2d 83, 87–88 (3d Cir. 1993).

## III.

The nursing homes argue that *Christ the King I* did not authorize the District Court to allow the agency to reopen the proceedings, reconsider the proposed amendment, and issue a redetermination. In *Christ the King I*, the panel found that the agency's decision was arbitrary and capricious. The panel mandate remanded the case to the District Court "for entry of a declaratory judgment for Plaintiffs, all in accordance with the opinion of this Court." The panel's opinion and mandate did not address further agency action after the remand to the District Court. The District Court's final judgment tracked the mandate's language.

When an appellate court "direct[s] the district court to act in accordance with [its] opinion . . . the opinion becomes part of the mandate and must be considered together with it." *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 224 (3d Cir. 1998) (internal quotation marks omitted). The District Court followed this rule in holding that its final judgment was "best understood as an implicit remand" to the agency for further consideration. *Christ the King Manor, Inc.*, 163 F. Supp. 3d. at 132.

We agree that the panel's opinion and mandate in *Christ the King I* authorized the District Court to allow the agency to reopen proceedings and issue a redetermination.

10

The panel held that the Secretary's finding was arbitrary and capricious, but the panel opinion stated that the holding did not:

> mean that Plaintiffs will necessarily be entitled to a rate recalculation, and we in no way suggest that they should have been paid in accordance with the previously approved state plan, which did not involve the use of any BAF for the 2008–09 fiscal year. When, as here, "the record before the agency does not support the agency action," the agency may be afforded an opportunity "for additional investigation or explanation," upon which the agency could lawfully base its action. *Fla. Power & Light Co.*, 470 U.S. at 744, 105 S.Ct. 1598. *Cf.* 42 U.S.C. § 1316(a)(4) (providing that, when a court of appeals reviews a state's appeal of an agency decision regarding a state plan, the court "may remand the case to the Secretary to take further evidence, and [she] may thereupon make new or modified findings of fact and may modify [her] previous action").

*Christ the King I*, 730 F.3d at 314 n.25. As the District Court noted, "if the panel did not intend for there to be a remand for further agency proceedings, this footnote would be but a gratuitous tease to HHS." *Christ the King Manor, Inc.*, 163 F. Supp. 3d at 131.

Other language from the panel opinion in *Christ the King I* also supports the District Court's ruling allowing further agency proceedings. The opinion stated, "[t]his appeal provides an opportunity for [the plaintiffs] to obtain some measure of relief, since, if the agency's action was arbitrary or capricious under the APA, we must set that action aside and require the agency to conform its action to federal law." *Christ the King I*, 730 F.3d at 304 n.18. The opinion also cited *Florida Power & Light Co. v. Lorion*, which sets out the well-settled principle that "[i]f the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* (quoting 470 U.S. at 744).

11

Established administrative law principles provide further support for allowing the agency to reopen, reconsider, and redetermine the validity of the 2008 plan amendment. *See E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 361–62 (3d Cir. 2012), *as amended* (Nov. 15, 2012) ("When an appellate court does not issue specific instructions on how to proceed, the question as to what further proceedings can be had consistent with the opinion of the appellate court must be determined from the nature of the case and the pertinent statutory provisions.") (internal quotation marks omitted).  Under the APA, a court may find an agency's action arbitrary and capricious, but the court is "not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (quoting *Fla. Power & Light Co.*, 470 U.S. at 744).  And nothing in *Christ the King I* indicates that this case was the "rare circumstance" precluding further agency action contemplated by *Florida Power & Light*.  470 U.S. at 744; *see Yusupov v. Att'y Gen. of U.S.*, 650 F.3d 968, 993 (3d Cir. 2011) (finding a "rare circumstance" that did not support agency remand when it had twice considered the record and there were no additional facts or evidence that could be developed).  Absent a rare circumstance, the ordinary and proper course is for an appellate court's remand to the district court to allow the agency to conduct additional investigation or provide additional explanation.  The District Court did not err by allowing CMS to reopen the deliberations and issue a redetermination.[2]

---

[2] We need not address the nursing homes' remaining arguments that reopening the approval process was an unlawful exercise of the Secretary's statutory or constitutional

## IV.

Because we hold that the agency's further consideration was proper, we consider whether the Secretary could reasonably rely on actual-experience data rather than only on the predictive data used when the plan amendment was first approved in 2008. As a threshold matter, the parties dispute whether this issue is properly before this Court. The nursing homes first raised the issue in their summary judgment briefing before the District Court, which found that the delay in raising the issue neither waived it nor caused the agency unfair prejudice. *Christ the King Manor, Inc.,* 163 F. Supp. 3d. at 133 n.8. We agree. And in light of our disposition on the merits, the waiver argument is moot. *See United States v. Brown*, 547 F. App'x 150, 152 n.2 (3d Cir. 2013) ("In light of our disposition of the appeal on the merits, we need not decide the applicability of the waiver provision.").

As stated above, we review the agency's decision under an arbitrary and capricious standard. Under this standard, we "may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 436 at 42. We note that § 30(A) does not forbid considering the actual-experience data in reopened proceedings, even if that data did not exist during the initial examination and approval. *Id.* at 43 ("[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider."). Other provisions

authority or that the Secretary was required to appeal the District Court's final judgment following the first appeal in order to reopen the record and reconsider whether to approve the amendment.

of the Medicaid Act reinforce the Secretary's decision to use the actual-experience data from 2008 to 2009 in the 2014 reexamination and redetermination. Under 42 U.S.C. § 1396n(f)(2), the Secretary may ask the State for "any additional information which is needed in order to make a final determination with respect to the request." The Secretary did so here. After this Court held that the Secretary's 2008 approval of the plan amendment was insufficiently explained and therefore arbitrary and capricious, the Secretary reopened the investigation and requested additional information from Pennsylvania. The State submitted hundreds of pages of supporting documents, including data showing that the reduced payments had not negatively impacted the quality of care the nursing homes provided during the year the reduced rates had been in effect. Nothing in § 1396n(f)(2) prohibits asking for or using that information. The statute instead states that the Secretary may request "any additional information which is needed" to approve or deny a proposed plan amendment.

The nursing homes conceded at oral argument that if the data showing the actual effect of the amended plan reimbursement rates had shown a *detrimental* effect on the quality of care due to the decrease in payments compared to what the amounts would have been under the prior year's reimbursement rates, their argument would be reversed. The nursing homes would then flip sides to argue that the Secretary *must* consider the recent actual-experience data. That says it all, or at least enough. The Secretary had the power to seek more information under § 1396n(f)(2). She did not act arbitrarily and capriciously by considering that information in the § 30(A) approval process.

14

Common sense also supports the Secretary's interpretation of § 30(A) to allow the agency to consider the actual-experience data in reexamining the proposed plan amendment. The Secretary need not blind herself to the more recent and accurate available evidence of a challenged payment rate's actual impact on the quality of care for Medicaid beneficiaries. "To find the Secretary's consideration of more recent data impermissible would be a foray into judicial abstraction." *Christ the King Manor, Inc.,* 163 F. Supp. 3d. at 137. The data showing the actual impact of the lower payments the 2008 plan amendment authorized is clearly more recent and more accurate than the predictive data available in December 2008, when the agency first examined the proposed change.[3] It makes little sense for the Secretary to ignore the "answers to the test."

## V.

The nursing homes also argue that the Secretary's 160-day delay in reopening approval proceedings after the District Court entered final judgment should result in judgment in their favor. *See* 42 U.S.C. § 1316(a)(1) ("the Secretary . . . shall, not later than 90 days after the date the plan is submitted to him, make a determination as to whether it conforms to the requirements for approval . . . ."). Nothing in the statute indicates that the 90-day timeline controls here, when a plan amendment is reexamined

_____

[3] Our holding is limited to the facts and circumstances of this case. We do not hold that in the ordinary approval process, the agency can delay deciding a proposed plan amendment's compliance with § 30(A) until the amendment has been in effect for an extended period and then consider the actual impact of the proposal. *See* 42 C.F.R. § 430.20 (noting the earliest effective date that a plan may be become effective after review).

after judicial review and rejection.  And, as the government notes, even if we found that the statutory timeline did apply, under § 1396n(f)(2), a requested plan amendment is deemed approved if not considered within that timeline.  *See* 42 U.S.C. § 1396n(f)(2) ("A request to the Secretary from a State for approval of a proposed State plan or plan amendment . . . shall be deemed granted unless the Secretary, within 90 days after the date of its submission to the Secretary," denies the request in writing or requests "any additional information which is needed" to make a final determination.).  This argument does not weigh in favor of reversal.

## VI.

We will affirm the judgment of the District Court.